[Civ. No. 4072. Second Appellate District, Division One.—February 5, 1923.]

ALICE ADELIA MORROW, Appellant, v. WILLIAM HENRY MORROW, Respondent.

[1] DIVORCE—EXTREME CRUELTY—FINDING—EVIDENCE.—In this action for divorce wherein the prayers of both parties were denied, except that the judgment awarded the custody of the minor children to the husband, the finding in general terms that the husband had not been guilty of extreme cruelty toward the wife and that he had not caused her bodily injury or mental suffering is sustained by the evidence.

[2] ID. — DENIAL OF DIVORCE — CUSTODY OF CHILDREN — POWER OF COURT.—In an action for divorce, the court is authorized under section 138 of the Civil Code to make an order awarding the custody of the children of the marriage to one of the parties, notwithstanding a divorce is denied to both.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. P. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

George D. Blair for Appellant.

W. I. Gilbert for Respondent.

JAMES, J.—This action was brought by the plaintiff for the purpose of securing a decree of divorce. The defendant filed a cross-complaint. Upon trial being had the court denied the prayers of both, except that the judgment included an order awarding the custody of the minor children, who were at the time of the ages of fourteen, nine, and four years, respectively, to the defendant. The eldest child was a girl; the two others were boys.

[1] Upon this, the plaintiff's appeal, the contention is first made that the evidence does not sustain the findings. While the findings fall far short of being models of clarity and conciseness, this contention is completely answered by the statement, which is abundantly borne out by the record presented, that there was a sharp conflict in the evidence, from which it follows that the trial court's decision must be taken as conclusive of the facts. The conflict was so absolute and decided as to leave no room whatsoever for the argument that the evidence opposed to that produced by the plaintiff was not of a substantial character.

The parties to the action were married at Seattle, Washington, in March, 1906. They afterward removed to Vancouver, B. C., where they established a laundry and by their joint efforts built up a lucrative business. Plaintiff testified that in 1919 the laundry plant was appraised at a value of one hundred and twelve thousand dollars, and that the company had acquired subsequent to that time additional prop-

---

2. Right of court refusing divorce to award custody of children, notes, 5 Ann. Cas. 91; Ann. Cas. 1912B, 350.

erty valued at about thirty-five thousand dollars. Prior to
the date when the plaintiff came to California, as will pres-
ently appear, she owned, and has since owned, fifty per cent
of the stock of the laundry company, and her husband has
owned the remaining fifty per cent. As secretary and treas-
urer of the corporation the wife, prior to coming to California,
drew a salary of three hundred dollars per month. During
the latter part of the time that the couple resided together
in Vancouver there were domestic difficulties which the hus-
band asserted were due to the fact that his wife had become
infatuated with a man named Hastings, who was five years
her junior. Hastings had resided with his wife in the house
immediately adjoining that occupied by the Morrows. The
plaintiff admitted that in a suit brought against her by Mrs.
Hastings she (plaintiff) was accused of having alienated the
affections of Mrs. Hastings' husband. At any rate, the do-
mestic difficulties of the Morrows reached a climax in April,
1920, when the defendant agreed that the plaintiff might
come to California with the three children for a period of
one year. An agreement was drawn up in which it was
provided that during that year each of the parties was to
draw from the laundry business the sum of three hundred
dollars per month as salary, and that the expenses of edu-
cation and maintenance of the children while they were
absent from the home should be provided from the returns
of the same business, it being expressly stated that the con-
sent of the husband to the taking of the children to Cali-
fornia should be without prejudice to "the rights of the
parties to the custody of the children." Certain other
moneys were agreed to be paid to the plaintiff by the hus-
band, including the rental of a certain house in Vancouver
and the price of a motor-car belonging to the wife. Imme-
diately after the making of this agreement the plaintiff came
to Los Angeles with the children, where she remained, except
for a brief visit to Vancouver after an absence of a year.
The year fixed in the agreement referred to having expired,
she commenced this action for divorce. She charged that
her husband had, several years prior to the bringing of the
action, been addicted to the inordinate use of intoxicating
liquors. She further charged that he had been guilty of
acts amounting to extreme cruelty. She charged that the
latter were such as to cause both physical and mental suffer-

ing; that on several occasions he had struck her, causing
bruises; that he had attempted to indulge in lewd prac-
tices; that he had carried on a correspondence with a woman
named Lou Finney, who resided in San Francisco, and had
visited the said Lou Finney and had planned to take a trip
to Honolulu with the latter.  Appellant has advanced the
particular contention that the court's finding that the de-
fendant did not correspond with Lou Finney or visit the said
Lou Finney at San Francisco is not sustained by the evi-
dence.  The court first found in general terms that the
husband had not been guilty of extreme cruelty toward the
plaintiff, and that he had not caused her bodily injury or
mental suffering.  Defendant was called to the witness-stand
and was shown two letters, one dated March 3, 1921, and
the other dated April 8, 1921, which letters were affectionate
in tone.  Defendant admitted that he had received the
letters from Lou Finney, but was not asked whether he had
ever visited the said Lou Finney or whether he had ever
planned to make a trip with her to Honolulu, and there
was no other evidence introduced upon that subject.  We
observe that the letters were apparently written, according
to their date, during the year that the plaintiff was in Cali-
fornia pursuant to the written agreement entered into be-
tween her and her husband.  While the letters appear to
have been produced from the hands of her counsel, plaintiff
did not testify or show as to when she had first seen them,
or as to what effect the knowledge of their contents pro-
duced upon her.  Under the admission of the defendant that
he had received the letters of Lou Finney, the particular
finding against the fact that there had been communication
between defendant and the said Lou Finney was perhaps not
strictly accurate.  But this defect in the findings must be
considered as nonprejudicial to plaintiff, for the reason that,
under the evidence, had the court particularly found the
fact to be that the correspondence had been carried on as
alleged, it could not have properly found that any mental
suffering was caused to the plaintiff by reason thereof.
Hence the general finding that such suffering had not been
caused was fully sustained by the evidence.

On his part the husband introduced evidence showing that
for a considerable period of time prior to the date when his
wife left Vancouver she had been guilty of acts of great

familiarity with Hastings, and it appeared in evidence that Hastings arrived in Los Angeles a little in advance of Mrs. Morrow and that the two had used the same office for purposes of business and had been in each other's company on frequent occasions.

[2]   The court was authorized to make the order giving the custody of the children to the defendant (Civ. Code, secs. 138, 246; *Ex parte Gordan,* 95 Cal. 377 [30 Pac. 561]), notwithstanding that a divorce was denied to both parties. There was evidence that the defendant had always been a considerate and affectionate father to the children. The home of the family and the business of both of the parties was located in Vancouver. The wife had never been excluded from the home nor from the support there which the husband was required to furnish her. A voice in the management of the business was not denied to her, nor was there denied her a right to receive a considerable salary so long as she would consent to perform the not onerous duties of secretary and treasurer of the company. The trial judge, moreover, upon consent of the parties, talked with the two elder children in his chambers before making the order relative to the custody, and while the record does not disclose what passed at that interview, we must assume that the court, by that interview, gained information which assisted him in determining upon the order which he later made in the case. There is nothing in the order of the court which in any way serves to prevent the plaintiff from enjoying the society of her children should she desire to return to the established home. Further than this, it may be observed that this order is subject to modification at any time, upon a reasonable showing, and, even though the parties remain separated, the wife, should she choose to become a resident of the city where her husband resides, might reasonably expect to have such conditions added to the order as would enable her to share in the custody of the minors.

The judgment and the order disposing of the custody of the minor children of the parties are affirmed.

Conrey, P. J., and Houser, J., concurred.